In the Matter of the Estate of ARTHUR J. CUMNOCK, Deceased.

Surrogate's Court, New York County, August 12, 1932.

*White & Case* [*Davie Paine* and *Dudley Miller* of counsel], for the executors.

*Duryee, Zunino & Amen* [*John Harlan Amen* of counsel], for Norman E. Ditman.

*Albert J. Rifkind*, special guardian.

*Murray, Aldrich & Webb*, for John W. Blodgett, claimant.

FOLEY, S.   I hold that the services rendered to the decedent by the claimant, Dr. Norman E. Ditman, were gratuitous and without expectation of payment.   They were rendered by the claimant because of his relationship to the decedent, as a brother-in-law, and because of his love and great affection for him.   There is no evidence of an agreement, express or implied, that the claimant was to be compensated for his services.   The testimony discloses that at no time in the past were bills ever sent by the claimant to the decedent for medical treatment, although he had attended the decedent on numerous occasions within the past ten or more years. The claimant testified he was always satisfactorily paid for whatever services he had rendered by the gift of cigars, stockings and articles of wear.   Only on one occasion, in 1929, after the claimant had refused to send the decedent a bill, did the latter send him a check in the sum of $500, which at first the doctor returned, but, after some persuasion, he accepted.   Shortly after the decedent's death Mrs. Cumnock, in pursuance of the wish of the decedent, expressed to her during his lifetime, sent a letter to the doctor expressing her deep gratitude and inclosing a check of $1,000 as a gift for the services performed.   In his reply Doctor Ditman stated that he had considered it a great honor to be able to help the decedent during his last fight for life and thanked Mrs. Cumnock for her gift.   Notwithstanding this gracious answer, on August 1, 1930, he sent a bill to the executor of the decedent's estate for the sum of $4,170.   He credited the estate with the sum of $1,000 received by him on account, leaving a balance of $3,170, which he now claims.   His bill was for 834 hours at the rate of $5 an hour from April 24, 1930, to June 7, 1930.   Accompanying the bill was an itemized statement showing that for five days, beginning with April twenty-fifth, the claimant attended the decedent consecutively for twenty-four hours a day; on April thirtieth and May first he attended him for twenty-two hours a day; on May second and third, twenty-one hours a day; from May fourth to May seventh, inclusive, twenty hours a day, and thereafter, until June sixth, eighteen hours a day.   On June seventh he attended him twelve hours.

As the trier of the facts I hold that the claim must be disallowed upon the merits.   (*Robinson* v. *Munn*, 238 N. Y. 40; *Matter of Flood*, 133 Misc. 77; *Matter of Quinn*, 142 id. 481.)   The motive underlying the claimant's prolonged attendance at the home of his brother-in-law was certainly not, in the circumstances disclosed, the expectation of compensation, but was his desire to help the decedent, as he himself expressed it, during his last fight for life.   The services rendered were clearly gratuitous.   As pointed out in *Robinson* v. *Munn* (*supra*), the inference of an implied contract to pay the

reasonable value of the services rendered, which may arise from the mere rendition and acceptance of the service, cannot be drawn where, because of the relationship of the parties, it is natural that such service should be rendered without expectation of pay. The testimony clearly indicates that the attendance by Doctor Ditman was induced by his relationship to and affection for the decedent. His change of attitude after death in the rendition of the large bill for services is unexplained, but it was perhaps due to subsequent events which indicate a different state of mind on his part from that which continued during the decedent's lifetime. The claim is, therefore, disallowed.

Submit decree on notice settling the account.